## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 25 2015, 6:24 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cody A. German,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 25, 2015

Court of Appeals Case No.
02A03-1506-CR-739
Appeal from the Allen Superior Court.
The Honorable Wendy W. Davis, Judge.
Cause No. 02D04-1408-F6-127

**Friedlander, Senior Judge**

[1] Cody A. German was convicted after a bench trial of residential entry[1] as a Level 6 felony and was sentenced for the offense. He appeals contending that there is insufficient evidence to rebut his defense of duress and that his sentence is both illegal and inappropriate. We affirm in part, reverse in part and remand.

[2] German was born in 1985 and by the age of fourteen had started using methamphetamine on a daily basis. He first used ecstasy when he was fifteen years old. By the age of sixteen, German was using marijuana daily, used cocaine on the weekends, and had tried acid. In 2004, German was convicted of minor in consumption and his suspended sentence was revoked in 2005. He was convicted of operating while intoxicated, resisting law enforcement, and intimidation in 2005. By 2006, his probation for the sentence imposed for his intimidation conviction was revoked. When German was either twenty-three or twenty-four years old, he tried mushrooms, and first tried synthetic marijuana at the age of twenty-five. In 2011, he was convicted of arson. While incarcerated for that offense, German used synthetic marijuana daily until his release.

[3] German was released to probation on January 18, 2014. Upon his release from incarceration, he moved into the Fair Oak Motel. Approximately two weeks prior to the incident in question, German telephoned police officers to come to his room when he found a mouse there. German suspected that someone had

___

[1] Ind. Code § 35-43-2-1.5 (West, Westlaw, current with all 2015 First Regular Session of the 119th General Assembly legislation.).

put the mouse in the room as a symbolic reference to his service as a jailhouse informant, sometimes known as a rat.

[4] On August 13, 2014, between 9:00 p.m. and 11:00 p.m., German left the motel to go for a walk. He thought he heard a car drive by and occupants of the car exit, saying "there he is." Tr. p. 49. German ran to Sandra Reed's house and banged on the door. Reed testified that German told her that "somebody was trying to kill him" and that "he was real agitated." *Id.* at 9. Reed slammed the door shut, called 911, and yelled to get her husband's attention. She looked outside to see where German went next, and in the course of doing so, did not observe anyone chasing German.

[5] Reed's neighbor, Dawn Osterman, was watching television with her husband, Glenn, and her daughter when she heard the back door, which was unlocked, open. German locked the door behind him and "yelled, call the police. Someone's trying to kill me." *Id.* at 17. German also told Dawn that he was a CI, or confidential informant. German testified that he told them he was a confidential informant even though he had not been one, because he "knew that entering the house would be a crime" and that he was trying to comfort the Ostermans. *Id.* at 60. Glenn grabbed his handgun and ordered German to the floor of the kitchen until the police arrived. Both Glenn and Dawn testified that they did not know German and they had not invited him into their home that evening.

Fort Wayne Police Department Officer Timothy Bobay arrived at the Ostermans' home within minutes and found German lying on the kitchen floor. Officer Bobay arrested German and searched him. During the search, German spat persistently. Officer Bobay asked German why he was doing so. German replied that "he had taken what he thought was ice, but it was glue". *Id.* at 35. This statement did not make any sense to the officer, who was familiar with street language for illegal drugs. German also stated that he was a confidential informant and that people he was unable to name were trying to kill him. He told the officer that he had sold his soul to the devil and that he was going to hell. Officer Bobay, who had eight years of experience as an undercover officer in the narcotics division, stated that based upon his experience, German's behavior was consistent with one who was under the influence of illegal drugs.

In response to the charge brought against him, German based his defense on insanity and duress. At trial, the parties stipulated to the admission of the reports of two licensed clinical psychologists who had evaluated German's sanity and his competency to stand trial. Dr. Stephen Ross's report concluded that there were two explanations for German's sanity at the time of the offense. First, his mental status could have been compromised due to the voluntary ingestion of a mind altering substance such as meth. The other explanation was that his mental status was compromised due to a paranoid disorder that was enhanced by not having a prescription for psychiatric medications. Dr. David Lombard concluded that German exhibited behavior consistent with schizophrenia with paranoia, bipolar disorder, and methamphetamine abuse

disorder. He further concluded that German's paranoia at the time of the offense influenced both his decision making and his actions because he believed he was trying to protect his life from harm.

[8] The trial court observed that voluntary intoxication is not a defense to the crime and rejected German's insanity defense because German knew that it was wrong to enter the house. The trial court also rejected German's duress defense, concluding that the evidence must be evaluated in light of what a reasonable person would think as opposed to a person who had ingested methamphetamine.

1.

[9] German claims that the State presented insufficient evidence to rebut his defense of duress making it necessary to reverse his conviction of residential entry. When reviewing a claim that the State has failed to present sufficient evidence to rebut a defense, the same standard applies as with other challenges to the sufficiency of the evidence. *Gallagher v. State*, 925 N.E.2d 350, 353 (Ind. 2010). We will affirm the conviction if the probative evidence and reasonable inferences drawn from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[10] Here, German challenges the sufficiency of the State's evidence to rebut his claim of duress. Indiana Code section 35-41-3-8(a) (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation.), provides in relevant part that it "is a defense that the person who engaged in the

prohibited conduct was compelled to do so by threat of imminent serious bodily injury to himself or another person." "The compulsion that will excuse a criminal act must be clear and conclusive." *Murrell v. State*, 960 N.E.2d 854, 857 (Ind. Ct. App. 2012). Furthermore, that compulsion must arise without the negligence or fault of the defendant claiming such defense. *Id.* The alternative with which the defendant is faced must be instant and imminent. *Id.* Additionally, per the language of the statute, "Compulsion under this section exists only if the force, threat, or circumstances are such as would render a person of reasonable firmness incapable of resisting the pressure." Ind. Code § 35-41-3-8 (1977).

[11] In order to establish that German committed residential entry as a Level 6 felony, the State was required to prove beyond a reasonable doubt that German knowingly or intentionally broke and entered the dwelling of Dawn and Glenn Osterman. Ind. Code § 35-43-2-1.5 (2013). Breaking may be established by evidence from which a trier of fact could infer that the slightest force was used to gain entry, including evidence of opening an unlocked door. *McKinney v. State*, 653 N.E.2d 115, 117 (Ind. Ct. App. 1995). Here, German, Dawn, and Glenn each testified that German opened two unlocked doors, entered the Ostermans' house, and locked the door behind him. German further testified that he knew he would be committing a crime by entering the house, and offered a false story to the Ostermans in an effort to comfort them. The Ostermans did not know German and did not invite him into their home. The evidence was sufficient to establish that German committed residential entry.

[12] In defense of his actions, German stated that he believed that others were trying to kill him because he had acted as a jailhouse informant. The trial court correctly observed that a reasonable person standard should be used when evaluating the claim of compulsion under duress. Ind. Code § 35-41-3-8(a) (1977). Applying that standard here, the evidence presented at trial established that Reed, Dawn, and Glenn did not see anyone chasing German. When Officer Bobay arrived, the group of people gathered were people from the neighborhood and were not gang members. Although German stated that he had been chased by the occupants of the car he heard, he could not name or identify those individuals. Furthermore, Officer Bobay testified that German's behavior was consistent with that of a person who had ingested illegal drugs. The reports of clinical psychologists who had examined German prior to trial concluded that German's behavior was likely the result of the ingestion of mind altering drugs such as methamphetamine causing psychotic behavior.

[13] The State sufficiently rebutted German's defense of duress. Assuming for the sake of argument that German was being chased by someone, the threat involved had long dissipated by the time he entered the Ostermans' house. No one saw suspicious activity in the neighborhood or anyone chasing German. Reed and the Ostermans had called 911. German did not establish that he committed residential entry because of a threat that was instant and imminent. The trial court did not err by rejecting the defense and finding that the State had presented sufficient evidence to support the conviction.

2.

[14]	German also claims that his sentence is both illegal and inappropriate. The State concedes that the judgment of conviction and abstract of judgment reflect that the trial court sentenced German to a sentence of four years for residential entry, a period that exceeds the statutory maximum for that offense. *See* Ind. Code Ann. § 35-50-2-7 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation.) (fixed term of between six months and two and one half years with the advisory sentence being one year).

[15]	The judgment of conviction and abstract of judgment also contradict the trial court's oral sentencing statement. We observe that in the oral sentencing statement the trial court addressed the sentences to be imposed for both the new conviction and probation revocation. The trial court indicated that the sentence to be imposed for the residential entry conviction was a period of two years. The trial court further stated that the previously suspended four-year sentence would be ordered to be served executed as German's probation was revoked. We remand this matter to the trial court to correct the abstract of judgment and judgment of conviction for the residential entry conviction, which also erroneously indicates that the sentence for the residential entry conviction was imposed after a guilty plea.

[16]	Because we are remanding this matter to the trial court to enter a sentence that does not exceed the statutory maximum, we do not address whether German's sentence was inappropriate in light of the nature of the offense and the character of the offender.

Judgment affirmed in part, reversed in part and remanded.

Kirsch, J., and Barnes, J., concur.